UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>Leneto Runee Wright<br><br>                            debtor | |
| Leneto Runee Wright,<br>                          Plaintiff<br>v.<br><br>Trystone Capital Assets, LLC,<br>                          Defendant. | Case No.:     20-12415-ABA<br><br>Chapter:      13<br><br>Adv. Proc. No.  20-1236-ABA<br><br>Judge:        Andrew B. Altenburg, Jr.<br><br>Hearing Date:  September 27, 2022 |

**MEMORANDUM DECISION**

Before the court are dueling motions for summary judgment filed by the parties. The plaintiff argues that he can avoid the defendant's tax lien foreclosure as a preference or a fraudulent transfer. The defendant argues that the plaintiff's preference action is time-barred and that he failed to meet all elements of a fraudulent transfer. While the court finds that the defendant is correct regarding the preferential transfer count such that the court can grant summary judgment in its favor on that transfer, summary judgment is not appropriate at this time on the fraudulent transfer count as the court may have created some confusion as to the determination of the time of transfer, warranting providing the plaintiff the opportunity to alternatively plead on that count.

**JURISDICTION AND VENUE**

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND**

Most of the facts are not in dispute. In 1995, Marlene Wright, wife of the debtor/plaintiff Leneto Runee Wright, entered into an installment contract with the Administrator of the Veterans

Affairs for the purchase of 344 Velde Avenue, Delair, New Jersey (the "Property"). Doc. No 49-2, ¶ 7. Later that year, the Administrator deeded the Property to Bankers Trust Company of California. Doc. No. 49-2, ¶ 3. When Ms. Wright died in 2012, her equitable interest in the Property devolved to Mr. Wright. Doc. Nos. 48-2, ex. B; 49-2, ¶ 7; 49-8, ex. F.

In 2016, Propel Funding Multistate LLC purchased a tax sale certificate from the Township of Pennsauken secured by the Property. Doc. Nos. 48-2, ex. C, 49-3, ex. A. In 2017, it assigned the certificate to Caz Creek II, LLC, and in 2018, Caz Creek assigned it to Cazenovia Creek Funding II, LLC. *Id.*; Doc. Nos. 49-2, ¶ 2, 49-3, ex. A.

On December 13, 2018, Cazenovia Creek filed a complaint to foreclose the equity of redemption styled *Cazenovia Creek Funding II, LLC v. Bankers Trustee Company of California, as Trustee for Vendee Mortgage Trustee 1995-3, State of New Jersey; John Doe and Jane Doe*. Doc. No. 48-2, ex. D; Doc. No. 49-2, ¶ 4. On December 28, 2018, Cazenovia Creek filed a lis pendens in connection with the complaint. Doc. No. 49-5, ex. C. Cazenovia Creek served the Summons and Complaint on Mr. Wright on January 6, 2019. Doc. No. 49-6, ex. D. On November 19, 2019, Cazenovia Creek assigned the tax sale certificate to the defendant here, Trystone Capital Assets, LLC. Doc. Nos. 49-2, ¶ 2, 49-3, ex. A. On January 17, 2020, Trystone became the owner of the Property by virtue of a Final Judgment of Foreclosure. Doc. No. 48-2, ex. H. The amount owed at that time was $19,345. Doc. No. 48-2, ex. G. On February 13, 2020, Mr. Wright filed his chapter 13 bankruptcy case.

With his summary judgment motion, Mr. Wright submitted Competitive Market Analyses ("CMA") of the Property obtained by him and by Trystone. Mr. Wright's CMA is dated July 6, 2020 and left blank the value that the "property is most likely to sell for." *See* Doc. No. 48-2, ex. L. It provides an average of $152,300 for the sale price of the three comparable properties. *Id*. Trystone's CMA is dated July 13, 2022 and concludes "that in the current market, your property is most likely to sell for $87,000." Doc. No. 48-2, ex. N; Doc. No. 49-9, ex. G.

Neither had much information regarding the Property: Mr. Wright's preparer only knew the style, year built, square footage, and number of baths. Doc. Nos. 48-2, ex. L. Trystone's preparer added to that the annual tax, tax assessment, lot acreage, and that there was no garage. *Id*. Neither knew the number of bedrooms or baths, or even had a photo of the Property. Doc. No. 48-2, ex. N; Doc. No. 49-9, ex. G. Both CMAs state that they are "NOT an appraisal of the market value for property and [are] not intended to be used for any legal purpose including . . . bankruptcy proceedings. . . ." *Id.* (emphasis in originals).

## PROCEDURAL HISTORY

As stated above, Mr. Wright filed a chapter 13 bankruptcy case on February 13, 2020. Bankr. No. 20-12415-ABA. He filed this complaint on April 27, 2020, and Trystone filed a Motion to Dismiss on June 9, 2020. Adv. Proc. 20-1236-ABA, Doc. Nos. 1, 6.[1] The chapter 13 trustee

---

[1] The parties later agreed to dismiss Counts III and IV of the complaint (Violation of N.J.S.A. Title 54 and Denial of Due Process). Doc. No. 17.

All further references to documents are to those filed in the adversary proceeding.

filed a letter declining from pursuing a preference or fraudulent transfer to set aside or avoid the transfer of the Property in this case. Doc. No. 45. She asserted that should the court decide that under the facts of the case, the trustee would have the ability to void the transfer pursuant to the provisions of 11 U.S.C § 547(b), § 548 or § 544(a)(3), the debtor would have standing to pursue such an action in place of the trustee pursuant to 11 U.S.C. § 522(h). *Id.*

After various motion practice, the court entered an order permissively abstaining from deciding what interest Mr. Wright had in the Property, a decision Mr. Wright appealed, but the District Court affirmed it. Doc. Nos. 29 (the "Abstention Order"), 39. Importantly, in the Abstention Order, the court abstained "from determining the *limited issue* of whether or not the Debtor has an interest in the real property located at 344 Velde Avenue, Delair, New Jersey." Doc. No. 29, p. 2 (emphasis added). Indeed, it further ordered that "the parties may pursue their state court rights as to the *limited issue* of establishing interest in the Property." *Id.* (emphasis added). This court explained:

> For the court to determine if the Debtor has an ownership issue in the Property, it would first need to determine if whatever interest Mrs. Wright had in the Property passed intestate to the Debtor upon her passing. Also, whether the Debtor's failure to include the Property on his Affidavit of Surviving Spouse had any impact on his right to the Property. This court is not an expert on New Jersey inheritance laws. Additionally, if the court were to find that upon Mrs. Wright's passing the Debtor had an interest in the property, it would next need to determine whether that interest survived the Foreclosure Action. What impact did the title search have? What impact did the service on John Doe have? What impact does the dismissal of John Doe from the Foreclosure Action? Was the final judgement final to the Debtor's alleged interests? All of these preliminary determinations are issues that are traditionally heard in state court.
>
> Thus, a chancery court in New Jersey would have more expertise to determine the *preliminary issue* of whether the Debtor has any ownership issue in the property, and the court will abstain on the issue of ownership.

Doc. No. 28, p. 4 (emphasis added).

Mr. Wright then submitted a Brief in Support of Plaintiff's Motion for Summary Judgment in the state court. Doc. No. 48-2, ex. A. There he stated that this court had instructed him to file an action in the state court to determine whether he had an interest in the Property "pursuant to 11 U.S.C. 547 and 548, to avoid any 'transfer' of an interest of a debtor in property." *Id.* (citing exhibit A, presumably this court's order). His only other reference to bankruptcy law came next, to the Code's section 101 that includes as one definition of transfer as "the foreclosure of a debtor's equity of redemption." *Id.* (citing 11 U.S.C. § 101).

In March 2022, the state court found that on December 13, 2012, upon his wife's death, an equitable interest devolved to Mr. Wright. Doc. No. 40. It stated that on January 17, 2020, that equitable interest transferred to Trystone. *Id.* Nowhere does the state court make a reference to

sections 547 and 548 and no evidence has been submitted that supports counsel's statement that the state court actually considered those provisions in making its decision.

Upon receipt of the state court order, this court entered an order scheduling discovery and setting a status hearing. Doc. No. 42. Trystone answered the complaint on April 1, 2022. Doc. No. 44. Mr. Wright filed a Motion for Summary Judgment on August 19, 2022, and Trystone filed its Motion for Summary Judgment on August 22, 2022. Doc. Nos. 48, 49. Both parties filed objections to the others' motions on September 6, 2022. Doc. Nos. 50, 51. The matter was set down for oral argument on September 27, 2022, with all parties appearing. At the conclusion of the hearing, the matter was taken under advisement. With all arguments made, all briefs and evidence submitted, and the record closed, the matter is ripe for disposition

## DISCUSSION

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56, the summary judgment rule, into adversary proceedings. Summary judgment avoids the expense and delay of an unnecessary trial when no material facts are in dispute and one of the parties is entitled to prevail on the merits. *See, e.g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977).

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To prove that no genuine factual issues exist, a movant must present a factual scenario without any 'unexplained gaps.'" *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970)).

The court must then only determine whether there is a genuine issue for trial, not weigh the evidence or determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

> A party with the ultimate burden of proof at trial . . . must satisfy a stringent standard to obtain summary judgment. *Nat'l State Bank v. Fed. Reserve Bank of N.Y.,* 979 F.2d 1579, 1582 (3d Cir. 1992). Under such a stringent standard, a district court "must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented ." *Foster v. Morris,* 208 Fed. Appx. 174, 179 (3d Cir. 2006) (quotation and citation omitted).

*Rest. Techs., Inc. v. Allora*, CIV A 06-5202 (MLC), 2008 WL 3843527, at *3 (D.N.J. Aug. 15, 2008).

Once the movant carries its burden, if the non-moving party fails to properly address the movant's factual assertion, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

When the movant is the defendant,

> it "has no obligation to produce evidence negating its opponent's case." [*Nat'l State Bank v. Fed. Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir. 1992).] Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* Once the movant has carried its burden under Rule 56(c), the opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c); *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir. 2001). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e).

*Maiorano v. Thompson*, No. CIV.A.04-2279(SDW), 2008 WL 304899, at *2 (D.N.J. Feb. 1, 2008).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Thus, "summary judgment cannot be granted unless the movant makes a showing on each required element and the nonmovant's response fails to raise a genuine issue of material fact as to any element." *Lencco Racing Co. v. Jolliffe*, 215 F.3d 1341 (Fed. Cir. 1999). *See In re Lenox Healthcare, Inc.*, 343 B.R. 96 (Bankr. D. Del. 2006):

> It is important to note that even if there are contested material issues of fact, summary judgment is appropriate if the non-moving party fails to support its claim:
>
>> [A] complete failure of proof concerning an essential element of the nonmoving *108 party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
>
> *Celotex*, 477 U.S. at 322–23, 106 S. Ct. 2548. *See also* 11 James Wm. Moore et al., Moore's Federal Practice—Civil § 56:11[1][B] (3d ed.2005) ("If proof is absent or insufficient regarding any necessary element of a claim, the claimant cannot win at trial and trial is therefore unnecessary.").

*Id.*, 107-08 (finding that trustee did not carry his burden of proving the avoidability of transfers under section 547(b), including section 547(b)(5), noting that there had been adequate time for discovery but the trustee presented no evidence in response to the defendant's motion for summary judgment to support an element essential to his claim).

**A. Time of transfer**

The determination of these motions hinge for both the preference and fraudulent transfer counts on when the transfer occurred.

Pursuant to section 547, a transfer made "on or within 90 days before the date of the filing of the petition" may be avoided as a preference. 11 U.S.C. § 547(b)(4)(A). Under section 547, "when a transfer is made depends upon when the transfer was perfected." 11 U.S.C. § 547(e)(2). It defines perfection as "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A).

Similarly, section 548 provides:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

11 U.S.C.A. § 548(d)(1).

In New Jersey, if a party files a lis pendens concerning a property and later prevails in the lawsuit, a bona fide purchaser would take subject to that party's interest, dating back to the date the lis pendens was filed. That is because New Jersey law provides that

> from and after the filing of a notice of lis pendens, any person claiming title to, interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein, as though he had been made a party thereto and duly served with process therein.

N.J.S.A. 2A:15-7(a).

Indeed, this court has previously determined that perfection in New Jersey relates back to the date of the filing of a lis pendens once a plaintiff is successful in its action to enforce an interest in property. *In re Stahlberger*, 20-23388-ABA, 2021 WL 509849, at *6 (Bankr. D.N.J. Feb. 10, 2021). Those colleagues in this district to have considered the issue agree. *See In re Morawski*, 20-12079, 2022 WL 1085739, at *4 (Bankr. D.N.J. Apr. 11, 2022) ("[A]s a matter of law, the transfer occurred when the *lis pendens* was filed, not when the final judgment of foreclosure was entered."); *In re Nealy*, 623 B.R. 278, 282 (Bankr. D.N.J. 2021); *In re Polanco*, 622 B.R. 631 (Bankr. D.N.J. 2020).

Mr. Wright asserts instead that the transfer date was January 17, 2020, the date of entry of the final judgment in foreclosure, i.e., when his equitable interest transferred to Trystone. He argues that the state court expressly ruled that that was the date of the transfer of his equitable interest. He argues that the *Stahlberger* opinion held that <u>only</u> where the parties in the avoidance action and the state court lawsuit are the same does a court apply the relation back test.

While the court disagrees with Mr. Wright's interpretation of *Stahlberger*, it nevertheless must correct its own error committed in that opinion. The court there mixed two different "relation back" applications. It correctly described the effect of a judgment binding persons claiming title to, interest in or a lien upon real estate described in a filed lis pendens pursuant to N.J.S.A. 2A:15-7(a). Those persons cannot claim an interest obtained after the lis pendens was filed superior to that of the successful plaintiff.

This court then wrongly cited the relation back doctrine regarding when a new cause of action is asserted in an action that may or may not relate back to the filing of a complaint for purposes of determining whether the new cause of action was asserted within the applicable statute of limitations. That type of relation back requires the parties, property and the general purpose and subject of the lawsuit, to be the same. *See In re Stahlberger*, 20-23388-ABA, 2021 WL 509849, at *7 (Bankr. D.N.J. Feb. 10, 2021) (citing *Turner v. Houpt,* 53 N.J. Eq. 526, 557 (1895), and *Trus Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. 22 (1984)). That type of relation back differs from the relation-back of a final judgment to the filing of a lis pendens. The latter bars *all* possible bona fide purchasers from acquiring an interest superior to that of the plaintiff, while the former only concerns whether the plaintiff's new cause of action is time-barred. For purposes of bankruptcy preference and fraudulent transfer avoidance actions, the bankruptcy court is concerned with when a transfer is perfected, not when a cause of action accrued. Here the relation back is created by N.J.S.A. 2A:15-7(a), as quoted above. This court stands by the remainder of its decision in *Stahlberger*.[2]

Regarding Mr. Wright's argument that the state court determined that the transfer from him to Trystone occurred upon the entry of the foreclosure judgment, first, that holding exceeded the state court's mandate: it was solely to determine what, if any interest, Mr. Wright ever held, as he could not avoid a transfer of an interest if he never held an interest. The Abstention Order and the decision in support thereof, could not have been any clearer. The express language of the Abstention Order limited the state court's determination to the limited issue of whether or not the debtor even had an interest in the Property. Doc. No. 29, p. 2. In addition to what is set forth in the Procedural History above, in rendering its decision, this court further explained:

> After considering the factors above, this court will abstain from adjudicating the specific issue of whether the Debtor *has an ownership interest in the Property*. Here, the court may permissively abstain as it may be estopped from determining the Debtor's state law rights in the Property. Abstention does not have an effect on

---

[2] Indeed, the result in *Stahlberger* would not be changed by elimination of the new cause of action discussion, as regardless, this court correctly held there that the date of transfer for preference and fraudulent transfer actions was the date of the filing of the lis pendens. Mr. Wright, same as Ms. Stahlberger, did not need to be a party to the tax sale foreclosure action for perfection to have occurred on the date of the filing of the lis pendens once Trystone obtained a final judgment.

> the efficient administration of the estate as the Debtor's right to the Property must be determined under appropriate inheritance and foreclosure laws and that right must be determined before the case can proceed. Having the state court decide predominant and specific and difficult state law inheritance and foreclosure rights and procedures promotes comity and consistency in the application of those laws and procedures. There is no prejudice to the non-debtor party Trystone and in fact, it prefers to proceed in the state court. ***And while the court acknowledges that it has jurisdiction over the fraudulent transfer and preference claims alleged here, it cannot make a determination as to those claims <u>without the state court first determining whether the Debtor had/has any interest in the Property at all under the state's inheritance and foreclosure laws.</u>*** . . .

Doc. No. 28, p. 5 (emphasis added). So, Mr. Wright's Brief in Support of Plaintiff's Motion for Summary Judgment in the state court stating that this court had instructed him to file an action in the state court to determine whether he had an interest in the Property pursuant to 11 U.S.C. §§ 547 and 548 to avoid any transfer of an interest of a debtor in property is at best, incorrect, if not misleading, when considering the reasoning in this court's decision and the express language of the Abstention Order. There is a complete absence of any reference to a state court determination of sections 547 and 548 therein and there certainly was *NO* instruction for the state court to determine the timing of the transfer. Indeed, such positions are inconsistent with Mr. Wright's earlier position that Congress has specifically enacted legislation empowering the bankruptcy courts with exclusive jurisdiction to avoid state judgments under sections 547 and 548. Doc. No. 18, p. 2.

      Second, the issue here is when the transfer occurred **for purposes of preference and fraudulent transfer law**, <u>not state law</u>. Preference and fraudulent transfer law defines transfer as a result of perfection, as recited above. *See* 11 U.S.C. §§ 547(e), 548(d). There is no evidence that the state court considered these definitions when stating when Mr. Wright's interest transferred to Trystone. Mr. Wright instead had provided the state court with only one of the four Bankruptcy Code *general definitions* of transfer, the foreclosure of a debtor's equity of redemption. *See* 11 U.S.C. § 101(54)(C). When Mr. Wright lost his right to redeem is not relevant to determining the time of transfer for preference or fraudulent transfer purposes.

      Even were the state court to consider the section 101 transfer definitions, "the creation of a lien" or "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with . . . property" match the section 547 and 548 definitions of transfer more closely. *See* 11 U.S.C. § 101(54)(A), (D). But Mr. Wright in his brief to the state court did not present those definitions to the state court. He did not even indicate that the definition he provided was only one of four possibilities. He did not mention the filing of the lis pendens, or sections 547(e) and 548(d). Thus, besides the date of transfer going beyond what the state court was to decide, this court cannot be bound by a holding that was based on lack of applicable law and facts.

Finally, a debtor may bring an avoidance action instead of the trustee only:

> to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> > (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> > (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

Here, the trustee declared on the record that she would not attempt to avoid the transfer, therefore Mr. Wright has standing to do so.[3]

### 1. Preference

Because the lis pendens was filed on December 28, 2018 and Trystone later obtained a judgment related to that lis pendens, no bona fide purchaser of the Property after December 28, 2018 could acquire an interest superior to the interest of Trystone. As Mr. Wright did not file his bankruptcy case until February 13, 2020, more than 90 days elapsed from the date of transfer, and accordingly, the preference action is time-barred. *See* N.J.S.A. 2A:15-7(a); *Stahlberger*, 22021 WL 509849, at *6; *Morawski*, 2022 WL 1085739, at *4; *Nealy*, 623 B.R. 278, 282; and *Polanco*, 622 B.R. 631.

### 2. Fraudulent transfer

The date of the transfer also factors in determining whether either party is entitled to summary judgment on the fraudulent transfer count. Section 548 authorizes a trustee to avoid any transfer of an interest of the debtor in property, in pertinent part, if the debtor voluntarily or involuntarily:

> (a)(1)(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1)(B).

---

[3] Mr. Wright asserts that the trustee "authorized" him to bring a section 548 fraudulent transfer action. This is incorrect. The trustee stated that she declined to bring the action and then expressly stated that Mr. Wright might be able to pursuant to section 522(h).

As related above and just as with the preference action, the time of transfer for purposes of a fraudulent transfer action under section 548 is the date of perfection, thus again, December 28, 2018. A transfer that was made or incurred on or within two years before the filing of a bankruptcy petition may be avoided as fraudulent. 11 U.S.C. § 548(a)(1). As Mr. Wright filed his case on February 13, 2020, there is no limitations issue with his fraudulent transfer action.

But turning to the insolvency elements of the fraudulent transfer action, Mr. Wright contends that while he received the benefit of being relieved of the $19,345 tax date, Trystone received a property valued at $87,000, therefore he received less than reasonably equivalent value. However, the $87,000 valuation is as of July 2022, not the December 2018 transfer date, or even the January 17, 2020 date Mr. Wright argues is the relevant date. As mentioned above, Mr. Wright also had a CMA prepared, as of July 2020, but not only is that also not the correct date, but the CMA did not even propose a value for the Property.

Mr. Wright next asserts that if he was not insolvent at the time of the transfer, he was *made* insolvent by the transfer. But in making this argument, he cites to the value of his assets and liabilities at the time he filed his bankruptcy case in February 2020, two years after the December 2018 transfer. Even if Mr. Wright had been correct about the transfer date being January 17, 2020, his CMA as of July 2020 did not provide a value. He asserts that "Plaintiff obtained a CMA from Nicholas Giannini, with a pricing recommendation for an average price of $152,300, using comparable properties sold near the time of filing and transfer[,]" Doc. No. 48-1, p. 5, but that is exactly what that is: just an average price of the sale prices of the comparable properties, without any adjustment for the differences of the Property. Thus, the court cannot find that Mr. Wright became insolvent due to the transfer.

"The burden of proof on a fraudulent transfer action lies with the party bringing the claims and must be proven by a preponderance of the evidence." *In re Fritze, LLC*, 07-02113 (DHS), 2009 WL 3245499, at *4 (Bankr. D.N.J. Oct. 6, 2009). As stated above, when a plaintiff is the movant seeking summary judgment, they must present a factual scenario without any unexplained gaps, while a defendant-summary judgment movant may only point to the lack of evidence supporting its opponent's claim. Here, Mr. Wright has failed to present facts as to the value of the property and to whether he was insolvent or made insolvent by the transfer, at the time of the transfer.

> When a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e), incorporated into adversary proceedings by Fed. R. Bankr. P. 7056.

Given this court's holding in *Stahlberger* plus the other similar holdings in this district, Mr. Wright could have plead in the alternative using the lis pendens date. Fed. R. Civ. P. 8(d), incorporated into adversary proceedings by Fed. R. Bankr. P. 7008. *See Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997) ("Especially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent, pleading"); *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("Pursuant to Rule 8(e)(2), therefore, we may not construe Henry's first claim as an admission against another alternative or inconsistent claim."); *In re Innovative Commc'n Corp.*, 07-30012 MFW, 2013 WL 1795977, at *4 (Bankr. D.V.I. Apr. 29, 2013) ("the Complaint's assertions of a section 544 claim under Virgin Islands law does not bar the other section 544 claims under the laws of New York and Florida."). Instead, Mr. Wright took the risk of holding fast to the January 2020 date. *See Morden v. XL Specialty Ins. Co.*, 2:14-CV-00224, 2017 WL 448588, at *5 (D. Utah Feb. 2, 2017) ("By failing to plead in the alternative, or indicate to the court the full scope of their case during summary judgment, the Mordens took the risk that the court ultimately would reject their theory of the case while simultaneously resolving the claims squarely presented."). When asked at oral argument whether Mr. Wright remained firm in his position that the January 20 date was the only date for the court to consider, counsel reaffirmed his stance.

Accordingly, the court could deny the relief requested and grant Trystone's relief for Mr. Wrights' failure to plead in the alternative. However, the Third Circuit has instructed the court that "doubts should be resolved in favor of reaching a decision on the merits", *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984), *citing Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir. 1983). And Fed. R. Civ. P. 56(e)(1) suggests that an appropriate remedy can be to give an opportunity to Mr. Wright to properly support or address his facts. Since there is debatable confusion that may have occurred as a result of the miscited relation back doctrine in *Stahlberger* that would make denial of Mr. Wright's summary judgment motion (because he used the wrong date of transfer) too harsh of a result at this time, the court will give Mr. Wright an opportunity to properly support or address the facts he must prove to support his fraudulent transfer claim rather than grant either parties' motion for summary judgment on that claim.

## CONCLUSION

Simultaneous motions for summary judgment require a court to view parties' arguments from both sides. Mr. Wright needed to show a lack of any genuine issues of material fact such that he is entitled to judgment as a matter of law. Notably, either transfer date asserted by the parties bars the preference claim.

Regarding the fraudulent transfer claim, while the value of the Property at the time of the transfer is a material fact as it factors into whether Mr. Wright was insolvent or made insolvent at the time of the transfer, the parties' dispute over this is not factual, it is legal: what is the date of the transfer. But the court cannot punish Mr. Wright for his reliance on the court's misstep in *Stahlberger* and pursuant to Fed. R. Civ. P. 56(e)(1), the court will grant him 60 days to obtain an appraisal of the property and submit evidence on his insolvency as of the December 2018 transfer date. If no supporting documents are filed by December 19, 2022, summary judgment will be granted in favor of Trystone. If supporting documents are filed, a Status Conference will be held on January 10, 2023 at 2:00 p.m. to determine what further steps need to be taken.

Finally, the court reminds the parties that, should Mr. Wright succeed in fulfilling these elements of his section 548 cause of action, the court will then proceed to determine whether, under section 550, Mr. Wright is entitled to return of his property, the value of Mr. Wright's exemption, or the amount of the claims of the unsecured creditors. This issue does not have to be addressed right now but only after the court has made its determination on the fraudulent transfer issue.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: October 17, 2022